**OKMULGEE DEMOCRAT PUB. CO. v. NATIONAL SUPPLY CO. et al.**

No. 14769—Opinion Filed Oct. 28. 1924.

(Syllabus.)

**Appeal and Error — Review—Sufficiency of Evidence.**

In an action at law, tried to the court, the judgment of the trial court will not be upheld unless it is reasonably sustained by competent evidence.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by the National Supply Company, a corporation, against the Okmulgee Democrat Publishing Company, a corporation, and others. Judgment for plaintiff, and the Okmulgee Democrat Publishing Company appeals. Reversed and remanded.

Fred M. Carter and C. M. Gordon, for plaintiff in error.

Dick & Pitchford, for defendant in error.

NICHOLSON, J. This action was brought by the National Supply Company, a corporation, against John H. Rebold, Minnetonka Lumber Company, a corporation, Okmulgee Furniture Company, Okmulgee Democrat Publishing Company, a corporation, and E. R. Black, to recover the sum of $18,000, and interest and attorney's fee, upon a promissory note executed and delivered by John H. Rebold to E. R. Black, and by Black sold, indorsed, and deliverd to the plaintiff, and for the foreclosure of a mortgage securing the payment of said note, covering certain real estate situated in the city of Okmulgee.

It was alleged in the petition that, in addition to the aforesaid note, said Rebold did on the same day execute and deliver to the defendant Black two promissory notes for the sum of $5,000 each, and one for the sum of $2,000, the payment of which was also secured by said mortgage; that one of said notes for the sum of $5,000, was owned and held by the defendant Okmulgee Democrat Publishing Company, one of said notes for the sum of $5,000 was owned and held by the Minnetonka Lumber Company, and the note for $2,000 was owned and held by the Okmulgee Furniture Company.

The Okmulgee Democrat Publishing Company filed its answer and cross-petition, admitting the execution of the notes and mortgage as alleged, and that it was the owner and holder of one of said notes for the sum of $5,000, and alleged that said John H. Rebold had been adjudged bankrupt; that D. H. McMasters was the duly elected trustee in bankruptcy of the estate of said bankrupt, and prayed that he be made a party defendant in said cause; that it have judgment against the property covered by said mortgage for the sum of $5,000, and accrued interest thereon, and for the sum of $500, attorney's fee, and prayed a foreclosure of the said mortgage. To this answer and cross-petition the defendant E. R. Black filed reply pleading that said note had been fully paid to him by John H. Rebold. Upon the issues thus framed a trial was had to the court, which resulted in a judgment in favor of the plaintiff, National Supply Company, for the amount sued for and in favor of the Minnetonka Lumber Company for the amount due on the note held by it, and in favor of the defendant E. R. Black, the assignee of the note and claim of the Okmulgee Furniture Company, but denied the Okmulgee Democrat Publishing Company recovery on the note held by it. From this judgment the Okmulgee Democrat Publishing Company has appealed.

The only question presented is whether or not the evidence shows that the note involved has been paid.

It appears from the record that John H. Rebold, the maker of this note, was the president and treasurer of the Rebold Lumber Company, a corporation, and owned 65 per cent. of the capital stock thereof; the other 35 per cent. of the stock being owned by E. A. Scripture and others; that said Scripture was general manager of the com-

pany. The Okmulgee Democrat Publishing Company is also a corporation of which said Rebold was president, and owned about 75 per cent. of its stock; the remainder of said stock was owned by E. G. Martin and others, and Martin was general manager of such corporation. The Black Petroleum Corporation was likewise a corporation, and the defendant E. R. Black owned more than 50 per cent. of its capital stock and was its president.

The Black Petroleum Corporation was indebted to the Rebold Lumber Company on account for lumber and rig timbers purchased in the sum of $4,132.06, which was long past due and the general manager of the lumber company was insisting upon payment of said account. On April 21, 1921, the note here involved, which bore date March 10, 1921, and matured six months after date, was indorsed and delivered by Black to the Rebold Lumber Company, and said company issued and delivered to Black its check for $914.64, the difference between the face of the note and $46.70 accrued interest thereon, and the amount owing it by the Black Petroleum Corporation on said account. The Rebold Lumber Company credited the Black Petroleum Corporation for the full amount of said account, and the Black Petroleum Corporation entered a credit on its books to the account of E. R. Black, for the amount of said account. Afterwards, and on May 6, 1921, the Rebold Lumber Company sold, indorsed, and delivered said note to the Okmulgee Democrat Publishing Company, and received in payment therefor the sum of $5,062.47, the same being the amount of the principal on said note with interest thereon to that date.

The only evidence upon the question of payment is that of the defendant E. R. Black, and is as follows:

"These two $5,000 notes were becoming due, and I spoke to Mr. Rebold once or twice, and I think he spoke to me once or twice about them. I told him—no, I don't believe I told him that I owed the Minnetonka Lumber Company a bill—I told Mr. McConnell, who was manager, that I had these two $5 000 notes—

"Q. Go ahead and tell the conversation with Mr. Rebold.

"A. I indorsed those two notes to the Minnetonka Lumber Company preparatory to turning them over to the Minnetonka Lumber Company. Mr. Rebold saw me, says that the Black Petroleum Corporation owes the Rebold Lumber Company, which Mr. Scripture tells me, some $4,000, and he asked me would it be satisfactory if he sent over a check for the difference and take up his note, his five thousand dollar note, and pay the bill of the Black Petroleum Company. or Black Petroleum Corporation, oil company, to the Rebold Lumber Company. In-as-much as the Rebold Lumber Company was his and the Black Petroleum was mine, I told him it would be satisfactory. Mr. Scripture came up and said Mr. Rebold had spoke to him about it and wanted to know if that was the deal, and I said 'yes'. Mr. Rebold, either in my office or again in the street, met me and the question of the notes came up again and he said it was satisfactory, he would send Mr. Peterson over, and Mr. Peterson came over there and took up one of the five thousand dollar notes, and when he came he brought a check, which I didn't see and had not seen it until today. I presume it was John Rebold's check for the difference in the bill of the Black Petroleum Corporation and the note against the Rebold Lumber Company, and I told Mr. Peterson that I had indorsed this note preparatory to turning it to the Minnetonka and to strike my indorsement off that note, and he said he and Mr. Ragsdale would handle that, and he stepped in the other room and I didn't see the check—no, I didn't see the note any more until today and the first time I knew that the note had not been paid between Mr. Rebold and myself was when the Democrat intervened here. I simply say that because of the fact that the notes were indorsed by me, both notes were indorsed, and I went to the Minnetonka and told them I could only give them one of the notes because one of them was taken up—

"Q. Mr. Black, I ask you to examine Exhibit A., and the indorsement thereon, and state whether 'pay to the order of Rebold Company without recourse' was written there before or after your indorsement?

"A. It was written there after. I never saw it before until today.

"Q. Now you heard the testimony of Mr. Peterson in which he testified about the conversation that he had with you relative to this note.

"A. I heard what he said, yes.

"Q. And I will ask you if you told Mr. Peterson —that he asked you to assign this note to the Rebold Lumber Company and you did indorse it to the Rebold Lumber Company?

"A. Nothing like that ever happened.

"Q. Did he ask you to indorse that to the Rebold Lumber Company?

"A. Never mentioned it; no, sir.

"Q. Do you recall any further your conversaton between you and Mr. Peterson except as you have related?

"A. As I related. I went out of the room."

Rebold denied that that he ever had a conversation with Black in regard to this note, but said that he had talked with him on two or three occasions in regard to the notes which matured later. Mr. Peterson, who was attorney for the Rebold Lumber Company and consummated the transaction between Black and the lumber company, testified in part as follows:

"A. On the —when this note was made on March 10, 1921, the Black Petroleum Company corporation owed Rebold Lumber Company something over $4,000, and I was instructed by Mr. Scripture, who was proprietor of the Rebold Lumber Company, or general manager of that company at that time, to bring suit against the Black Petroleum corporation for the collection of the account, so I told—I reminded Mr. Scripture that Black owned some notes of John H. Rebold secured by first mortgage on the property involved in this lawsuit, and Mr. Scripture then instructed me to see if I could not buy this note from Mr. Black. Mr. Scripture first had some negotiations with Mr. Black and they were unsuccessful, and then one morning Mr. Black met me down to the post office and said Scripture had talked with him about this deal and said he believed he would make it, needed a little cash to go to Chicago and had a balance coming to him, and that morning Mr. Ragsdale, who at that time was bookkeeper and I think secretary of the Black Petroleum Corporation, and I figured up the amount that the Black Petroleum Corporation owed the Rebold Lumber Company; also figured up the interest on the note. Then we got these amounts determined, I went over to the Rebold Lumber Company's office and got the Rebold Lumber Company's check for the difference in the sum of $914, something like that, it was between $900 and $1,000, and so I gave Mr. Black the check for $914. I think that is what it was and Mr. Black agreed—I mean paid the Black Petroleum Company's account. Now, when he handed me this note it was not indorsed and I asked him to indorse it, so he said he didn't want to be liable on the note. I then suggested that he indorse it without recourse, so that Mr, Ragsdale wrote on this 'Pay to the order of Rebold Lumber Co. without recourse.' and when he wrote it Mr. Black signed it in my presence and in Mr. Ragsdale's presence. I took the note and delivered it to Mr. Scripture, who was then manager of the Rebold Lumber Company.

"Q. Were you present when the indorsement was made over?

"A. Yes, sir; I saw him sign it.

"Q. With the words, 'Pay to the order of the Black Petroleum Company without recourse'?

"A. No, pay to the order of the Rebold Lumber Company.

"Q. I mean to the Rebold Lumber Company without recourse?

"A. Yes, sir.

"Q. Mr. Ragsdale wrote that?

"A. Yes, sir.

"Q. Were you and Mr. Ragsdale present when Mr. Black signed it?

"A. Yes, sir.

"Q. Were you present when the Rebold Lumber Company gave to Mr. Black its voucher for the difference in accounts?

"A. I gave him the voucher myself."

Mr. Rasgdale, who was secretary and treasurer of the Black Petroleum Corporation, testified that he remembered the transaction in question and that he wrote the indorsement "Pay to the order of Rebold Lumber Company without recourse" on the note, but had no recollection of when such indorsement was made. This is all the evidence material to the question under consideration.

In actions of this character, the judgment of the trial court will not be disturbed if there is competent evidence to sustain it, but such judgment will not be upheld unless it is reasonably sustained by competent evidence, and the judgment in this case is not so sustained. If the testimony of Black is given full weight, it does not show that the note was paid, but merely shows that Rebold asked him if it would be satisfactory if he sent over a check for the difference between the amount Black owed the lumber company and the amount of the note held by Black "and take up the note" and thereby pay the account owing the lumber company by the Black Petroleum Corporation. Black agreed to this and the evidence is undisputed that the lumber company gave to Black its check for the difference between the amount of the Rebold note and its account against the Black Petroleum Corporation, and that it satisfied such account and that Black indorsed the note to the lumber company without recourse. There can be no question but that the lumber company paid to Black the amount of the note, and that Rebold paid nothing. The fact that Rebold owned a majority of the stock in the lumber company and was its president and treasurer did not make the transaction his individually. The corporation was a legal entity distinct from its individual stockholders. It had the power to purchase the note in question. Rebold was without authority to use the assets of the corporation for the payment of his individual indebtedness.

It is clear to us that if the conversation

between Black and Rebold was had, as testified to by Black, that Rebold was acting only for the lumber company and not for himself.

The contention of the defendants in error that Rebold, after paying the note, elected to reissue it and again place it in circulation finds no support in the evidence, hence the authorities cited in support of this contention have no application here.

The judgment of the trial court is reversed and the cause remanded for a new trial.

All the Justices concur, except MASON. J., not participating.